23-03004-cgb Doc#139-8 Filed 05/28/25 Entered 05/28/25 18:09:38 Exhibit 8. First Amended Disclosure Statement Pg 1 of 20

**EXHIBIT 8** - FIRST AMENDED DISCLOSURE STATEMENT (DKT. 116)

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 21-30107 |
| PDG PRESTIGE INC. | § | (Chapter 11) |
| Debtor. | § | |

**FIRST AMENDED DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED PLAN OF REORGANIZATION OF PDG PRESTIGE INC. DATED January 17, 2022**

**THIS DISCLOSURE STATEMENT IS SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT**

**SUMMARY OF IMPORTANT DATES AND DEADLINES**

| | |
|---|---|
| **Deadline to file objections Plan of Reorganization (the "Objection Deadline"):** | SEE ORDER SETTING DEADLINES |
| **Deadline to submit ballot regarding the Plan of Reorganization (the "Ballot Deadline"):** | SEE ORDER SETTING DEADLINES |
| **Hearing to consider Plan of Reorganization (the "Confirmation Hearing"):** | SEE ORDER SETTING DEADLINES |
| **Location of Confirmation Hearing:** | United States Bankruptcy Court 511 E San Antonio Ave El Paso, TX 79901 **SEE ACCOMPANYING NOTICE OF HEARING FOR CURRENT APPEARANCE PROTOCOALS** |

1. **INTRODUCTION.**

    1.1. **Form Explanation; Defined Terms.** For convenience, this disclosure statement is based upon the prior official small business form, Form B25B. However, this is not a "small business case" as defined under Code §∘101. *Controlling definitions and rules of construction appear in Section 9 of the Plan.*

    1.2. **Overview.** This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of PDG Prestige Inc., a Texas corporation that is the Debtor and Debtor in Possession ("PDGP" or the "Debtor") in the above-captioned bankruptcy case (the "Bankruptcy Case"). This Disclosure Statement contains information about PDGP and describes and provides information in connection with the proposed *First Amended Plan of Reorganization of PDG Prestige, Inc. Dated January 17, 2022* (the "Plan") filed by PDGP on January 17, 2022 and that accompanies this Disclosure Statement. ***YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM***

*WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.*

1.3. **Proposed Distribution to General Unsecured Creditors.** The proposed distributions under the Plan and the material terms of the Plan, including the estimated distribution to unsecured creditors is set forth in TABLE 1—Key Plan Terms, Section 2 of the accompanying Plan ("**TABLE 1**"). Secured claims will be paid in full according to the claim(s) filed or pursuant to the agreement of the parties. General unsecured creditors (other than the Westar Litigation Parties) will receive payment in full to the extent of their allowed claims.

1.4. **Purposes of Disclosure Statement — Adequate Information.** The purpose of this Disclosure Statement is to provide adequate information within the meaning of Section 1125 of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code" or "11 U.S.C. [section number]"). Accordingly, this Disclosure Statement among other things describes the following.

    1.4.1. The Debtor and significant events during the bankruptcy case.

    1.4.2. How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed).

    1.4.3. Who can vote on or object to the Plan.

    1.4.4. What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

    1.4.5. Why PDGP believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.

    1.4.6. The effect of confirmation of the Plan.

    1.4.7. **PLEASE READ THE PLAN AS WELL AS THE DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT DESCRIBES THE PLAN, BUT IT IS THE PLAN ITSELF THAT WILL, IF CONFIRMED, ESTABLISH YOUR RIGHTS.**

**2. IMPORTANT DATES AND DEADLINES.**

2.1. **Approval of Disclosure Statement.** The Court has not yet confirmed the Plan. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

2.2. **Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan.** The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place at the date. time, and Location of the Confirmation Hearing shown on Page 1 above.

2.3. **Deadline For Voting to Accept or Reject the Plan:** If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Jeff Carruth, Weycer, Kaplan, Pulaski & Zuber, P.C., 3030 Matlock Road, Suite 201, Arlington, Texas 76015, (713) 341-1158, facsimile (866) 666-5322, jcarruth@wkpz.com. See Section 9.3 below for a discussion of voting eligibility requirements. Ballots may be delivered by mail, fax,

**FIRST AMENDED DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED PLAN OF REORGANIZATION OF PDG PRESTIGE INC. DATED January 17, 2022 — Page 2**    2076746.DOCX[1]

or email. **Your ballot must be received by the Ballot Deadline shown on Page 1 above, or it will not be counted.**

2.4. **Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan:** Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon parties entitled to receive notice by the Objection Deadline shown on Page 1 above.

3. **BACKGROUND OF THE DEBTOR.**

3.1. **Description and History of the Debtor's Business.** PDGP owns and is the developer of a ±3.29 acre tract of real property in Las Cruces, Dona Ana County, New Mexico and sometimes referred to as Mesilla Valley Mall Subdivision, Replat No. 5 (the "Subject Property"). The Subject Property is divided into two lots, Lot 3A and Lot 1A, as depicted in **Exhibit PDG306** (with Lot 2A being a different tract of property under different ownership on the same block).

3.2. PDGP also owns the majority of the equity interest in a second real estate development entity, The Gateway Ventures, LLC, which is the subject of a separate bankruptcy case currently pending in this Court. The Effective Date of TGV's confirmed plan (the "TGV Plan") was October 18, 2021, and PDGP retains all of its equity interest in TGV under such plan.[1] As of the filing of this Disclosure Statement, the amount and/or timing of any net distribution from TGV to PDGP is uncertain as to amount and/or timing, and the Debtor does not anticipate a final resolution of the Legalist loan against the TGV property in time to materially benefit the funding of this Plan. Conversely, should TGV realize any profits from TGV, then those proceeds would be available to assist with the funding of this Plan.

3.3. **Value of the Debtor's Property and Lien Claims.** The Debtor believes that the Subject Property as of the Petition Date possessed a stabilized value of $4,700,000. Certain investment fund(s) for which Legalist DIP GP, LLC serves as general partner (collectively, "Legalist") holds a first consensual lien against the subject property in the amount of original principal amount of $4,700,000 under the DIP Credit Agreement approved by an order (Docket No. 53) entered on April 9, 2021 (the "DIP Order"). The claim of Legalist is an allowed secured claim pursuant to the DIP Order. The Maturity Date of the Legalist facility is on or about January 9, 2022 under the formula in the DIP Credit Agreement, which Maturity Date has been extended for 90 days through and until April 9, 2022.

3.4. **Insiders of PDGP.**

    3.4.1. *Management of PDGP Before the Bankruptcy Case.* Michael Dixson, President managed PDGP at all relevant times prior to this Bankruptcy Case.

    3.4.2. *Management of PDGP During the Bankruptcy Case.* PDG Prestige, Inc. (Michael Dixson, President) has managed PDGP at all times during this Bankruptcy Case.

    3.4.3. *Management of the Debtor After the Bankruptcy Case.* After the Effective Date of the order confirming the Plan, Michael Dixson, President shall continue to manage PDGP.

---

[1] Case No. 21-30071, *In re The Gateway Ventures, LLC*.

**FIRST AMENDED DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED PLAN OF REORGANIZATION OF PDG PRESTIGE INC. DATED January 17, 2022 — Page 3**    2076746.DOCX[1]

3.5. **Significant events before and during the Chapter 11 case.**

    3.5.1. *Events Leading to Chapter 11 Filing.* This Chapter 11 case was commenced by a voluntary petition filed on February 15, 2021 (the "Petition Date") in order to stop the foreclosure of the Subject Property by CityBank of Lubbock, Texas. Previous efforts to develop and/or sell the Subject Property were thwarted in 2019-2020 prior to the Petition Date as a result of various litigation and /or notices of lis pendens asserted by Thomas Springer and/or related entities and Dennis Crimmins and/or related entities.

    3.5.2. *Events during and information relating to this Bankruptcy Case:* The entirety of the events that have occurred during this Chapter 11 case may be found on docket sheet of this case available at the Court or through the PACER website of the Court, *https://ecf.txwb.uscourts.gov/.* A portion of the Docket showing significant events of this case is attached hereto as **Exhibit PDGP301**.[2] Any of the documents on file in this case may be obtained by contacting the undersigned law firm or are available at the following shared folder link shown in the footnote below and selecting the folder for this case.[3]

        *Crimmins Adversary.* On April 21, 2021, Dennis Crimmins removed to this Court Case No. D-307-CV-2020-01698, *Dennis Crimmins, Plaintiff v. Michael J. Dixson, PDG, Inc., and PDG Prestige, Inc., Defendants* from the Third Judicial District Court of the County of Dona Ana, New Mexico (the "Crimmins Lawsuit"). As of November 3, 2021, this litigation is still pending under Adversary No. 21-03007.

        Dennis Crimmins also has filed a void, voidable, and/or disputed notice of lis pendens (the "Crimmins Lis Pendens"). On November 18, 2021, the Court entered judgment in favor of PDGP and voided the Crimmins Lis Pendens as a final disposition of the Crimmins Lawsuit.

        *DIP Financing.* By an order (Docket No. 53) entered on April 9, 2021, PDGP obtained debtor in possession financing from Legalist. The loan was in the original principal amount of $4,700,000, and a substantial portion of the proceeds were used to pay off the claim of CityBank.

        *Westar Litigation.* PDG Prestige also was a party to certain pre-petition litigation brought by Westar Investors Group LLC against The Gateway Ventures, LLC et al., which litigation was removed to Case No. 21-30071, and which litigation ultimately was resolved by the TGV Plan.

        *Bubba's Lease and Sale of Lot 1A.* On or about November 8, 2019, the Debtor originally entered into a ground lease with Strategic Restaurant Concepts, LLC (Bubba's 33) (the "TR-Lease") with respect to Lot 1A, which lease was not in effect as of the Petition Date but which since has revived following the Petition Date. On or about December 20, 2021 the Debtor entered into a Purchase and Sale Agreement with The Paul Rothbard Revocable Living Trust Dated August 23, 2006, as Amended and/or Assigns for the sale of Lot 1A and the assignment of the TR-Lease for a

---

[2] The Debtor is consecutively numbering all exhibits throughout this case. The exhibits related to the plan and disclosure statement will being with the number 300 beginning with the ballot exhibit to distinguish from previous exhibits used in this case.

[3] https://drive.google.com/drive/folders/12y_awWL_736_SL3LVx812FBBQsFzl5Pj?usp=sharing

**FIRST AMENDED DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED PLAN OF REORGANIZATION OF PDG PRESTIGE INC. DATED January 17, 2022 — Page 4**    2076746.DOCX[1]

purchase price in the amount of $2,615,000.00. Closing is expected to occur before March 31, 2022. NMREA/Colliers (see Section 5 below) holds a contingent lien with respect to the TR-Lease and thus will be paid approximately $48,000 at closing. PDGP estimates that cash in the approximate amounts of $2,000,000 to $1,800,000 will result from this sale for use with respect to the Plan.

*Additional Leases and NMREA/Colliers.* Prior to the Petition Date, the Debtor had executed leases with the various parties to lease space on improvements to be constructed by PDGP on Lot 3A:[4] Aspen Dental, Zale's, Sleep Number, and Cheba Hut (collectively, the "Various Leases"). The Various Leases are the basis of the contingent remaining liens of NMREA/Colliers (see Section 5 below).[5] The possibility exists that PDGP could revive and perform the Various Leases following the Effective Date upon the construction of improvements upon the Subject Property, in which event NMREA/Colliers would assert a right to payment based upon the previously filed liens. Conversely, if other tenants are found for the Lot 3A, then the contingency with respect to NMREA/Colliers would be extinguished.

PDGP paid NMREA/Colliers $168,862.00 of earned and payable commissions as part of the DIP Financing. The order approving the Legalist DIP facility provide that the Debtor would escrow $184,000 to reduce contingent lien obligations of NMREA/Colliers when the balance of the commissions began earned and payable. The Debtor was unable to fund the $184,000 escrow, and thus any contingent claims of NMREA/Colliers which become due and/or payable would

3.5.2.1. *Projected Recovery of Avoidable Transfers and other claims and causes of action of the estate.* Excluding any objections to claims and any related set offs, PDGP does not believe that it is necessary to rely upon litigation to fund the obligations of the Plan and thus does not intend to prosecute any other avoidance actions or any other lawsuits under Code §§544, 547, 548, 549, and/or 550 (collectively, the "Chapter 5 Claims"). ***Nonetheless, PDGP expressly reserves and retains for the benefit of the estate and/or the Reorganized Debtor any and all facts, claims, causes of action, issues, rights, remedies, and/or defenses related to any Chapter 5 claims.***

3.5.2.2. PDGP also expressly reserves and retains for the benefit of the estate and/or the Reorganized Debtor any and all facts, claims, causes of action, issues, rights, remedies, and/or defenses that are asserted or that may be asserted in the Crimmins Adversary against Dennis Crimmins and any person, entity, or insider of Dennis Crimmins in relation to any and all claims and/or causes of action of PDGP relating to the Crimmins Lis Pendens, including but not limited to slander and/or impairment of title, consequential damages, and any penalties or damages under applicable New Mexico law or other applicable law.

3.5.2.3. PDGP also expressly reserves and retains for the benefit of the estate and/or the Reorganized Debtor any and all facts, claims, causes of action, issues, rights, remedies, and/or defenses against New Mexico Real Estate Advisors, Inc.

---

[4] In terms of Code §365 issues, the leases were not performing by the parties as of the Petition Date, and as a purely contractual matter PDPG believes that revival of the leases would constitute a post-Petition Date and post-Effective Date transaction.

[5]

**FIRST AMENDED DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED PLAN OF REORGANIZATION OF PDG PRESTIGE INC. DATED January 17, 2022 — Page 5**　　　2076746.DOCX[1]

        d/b/a Colliers International, including but not limited to claims for breach of contract and/or one or more intentional tort claims.

> 3.5.2.4. **Otherwise, PDGP may provide notice of additional claims and/or causes of action by a supplement to the Disclosure Statement and/or Plan to be filed within ten (10) days of the Confirmation Hearing.**

    3.5.3.    *Objections to Claims.* Except to the extent that a claim is already allowed pursuant to a final non-appealable order, PDGP reserves the right to object to claims (including scheduled claims) through and until and even after the Effective Date. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

## 4. CURRENT AND HISTORICAL FINANCIAL CONDITIONS.

4.1.    The identity and initial stabilized value of the estate's assets are described in Schedule A-B (Docket No. 24) and/or as may be amended, and as previously filed by the Debtor, a copy and/or summary of which is attached as **Exhibit PDGP302**. As of the date of this Disclosure Statement, the Debtor has not sold any portion(s) of the Subject Property, although some of the Subject Property is under contract as referenced and described above.

4.2.    The most recent operating report of the Debtor is available on PACER, the Google drive link described above, and/or or by contacting the undersigned.

## 5. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS.

5.1.    **What is the Purpose of the Plan of Reorganization?** As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. *If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.*

5.2.    **Schedule showing classification claims.** A schedule showing the classification and summary of the treatment of all known claims appears in TABLE 1.

5.3.    **Treatment of Claims and Equity Interests**. The treatment of Claims and Equity Interests under the Plan is set forth in TABLE 1, Section 2, and Sections 4-5 of the Plan.

5.4.    **All claims subject to potential objection.** *Each of the claims reference and described in the categories and/or classes below does not indicate that any particular claim will be allowed or not be the subject of an objection. Moreover, the described treatment of any such category and/or class of claims does not indicate that that any particular claim will be allowed or not the subject of an objection.*

## 6. MEANS OF IMPLEMENTING THE PLAN.

6.1.    **Sale Motion.** To the extent necessary, this Plan also constitutes a sale motion under Code §363(f) to sell Lot 1A free and clear and all liens, claims, and encumbrances as described below, with the proceeds of such sale being used to fund the Plan as described herein.

    As also described in Disclosure Statement §3.5.2, on or about November 8, 2019, the Debtor originally entered into a ground lease with Strategic Restaurant Concepts, LLC (Bubba's 33) (the "TR-Lease") with respect to Lot 1A, which lease was not in effect as of the Petition Date but which since has revived following the Petition Date. On or about December 20, 2021 the Debtor entered into a Purchase and Sale Agreement with The Paul Rothbard Revocable Living Trust Dated August 23, 2006, as Amended and/or Assigns for the sale of Lot 1A and the assignment of the TR-Lease for a purchase price in the amount of $2,615,000.00.

6.2. **Source of Payments.** Payments and distributions under the Plan will be funded by the continued development, refinance, and/or sale of the Subject Property.

    As discussed above, the Debtor believes that the sale of Lot 1A will result in cash of approximately $1,800,000 to $2,000,000 to fund the Plan, almost all of which will go to reduce the claim of Legalist.

    PDGP believes that the Various Leases will be revived following the Effective Date, and upon such revival will permit a sale of Lot 3A and/or refinancing of the remaining indebtedness following the sale of Lot 1A.

    PDGP is also seeking exit financing from a more traditional asset-based and/or real estate lenders which financing would be used to reduce the remaining balance of the Legalist debt and to pay an additional costs of development. If the exit financing is achieved prior to the Confirmation Hearing, the Plan may be amended and/or modified to address the exit financing.t

6.3. **Post-confirmation Management.** The Post-Confirmation Manager of the Debtor, and their compensation, shall be as follows. Michael Dixson, President, base fee of $200,000 per year, if funds are available and subordinated to all Plan payments.

6.4. **Risk Factors.** The proposed Plan has the following risks: The Debtor potentially will be unable to complete the sale(s) and/or refinancing of the Subject Property in accordance with the development plan. The Debtor potentially will not generate sufficient cash flow to service the debts to be paid over time under the Plan. The general economic uncertainty associated with the remaining effects of the COVID-19 pandemic provides substantial additional risk.

**7. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

7.1. The Plan (and TABLE 1) lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. The Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

7.2. If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan by the Objection Deadline.

7.3. **All executory contracts and unexpired leases that are not listed in Section 6.1 of the Plan and/or TABLE 1 will be *REJECTED* under the Plan**. Consult your adviser or attorney for more specific information about particular contracts or leases. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. *The Debtor may amend TABLE 1 through and until*

*the Confirmation Hearing with respect to contracts and/or leases to be assumed and/or rejected.*

8. **TAX CONSEQUENCES OF THE PLAN.**

   **CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.**

9. **CONFIRMATION REQUIREMENTS AND PROCEDURES.**

   9.1. **Requirements of confirmation.** To be confirmable, the Plan must meet the requirements listed in Code §§1129(a) or (b). These include the requirements that: (1) the Plan must be proposed in good faith; (2) at least one impaired class of claims must accept the plan, without counting votes of insiders; (3) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and, (4) the Plan must be feasible. These requirements are not the only requirements listed in Code §1129, and they are not the only requirements for confirmation.

   9.2. **Who may object to confirmation.** Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired. *Even if you are not entitled to vote on the plan (as discussed below), you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.*

   9.3. **Classes entitled to vote.** In this case, the Debtor believes that classes of claims in the Impaired Classes (as described in TABLE 1) are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

   9.4. **What Is an Allowed Claim or an Allowed Equity Interest?** Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Bankruptcy Rule 3018(a). **The deadline for filing a proof of claim for non-governmental entity creditors in this case was June 19, 2021.**

   9.5. **What Is an Impaired Claim or Impaired Equity Interest?** As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in Code §1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

   9.6. **Who is *Not* Entitled to Vote?** The holders of the following five types of claims and equity interests are *not* entitled to vote: (i) holders of claims and equity interests that have been disallowed by an order of the Court; (ii) holders of other claims or equity interests that are not

"allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes; (iii) holders of claims or equity interests in unimpaired classes; (iv) holders of claims entitled to priority pursuant to Code §§507(a)(2), (a)(3), and/or (a)(8); (v) holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and/or (vi) holders of administrative expenses.

9.7. **Who Can Vote in More Than One Class?** A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

9.8. **Votes Necessary to Confirm the Plan.** If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by cram down on non-accepting classes, as discussed below.

9.9. **Votes Necessary for a Class to Accept the Plan.** A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan. A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

9.10. **Treatment of Nonaccepting Classes.** Even if one or more impaired classes rejects the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by Code §1129(b). A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Code §1129(a)(8), does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

9.11. *YOU SHOULD CONSULT YOUR OWN ATTORNEY IF A CRAM DOWN CONFIRMATION WILL AFFECT YOUR CLAIM OR EQUITY INTEREST, AS THE VARIATIONS ON THIS GENERAL RULE ARE NUMEROUS AND COMPLEX.*

9.12. **Liquidation analysis.** To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit PDGP303.**

9.13. **Feasibility.** The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

9.14. **Ability to Initially Fund Plan.** The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. One or more tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this Disclosure Statement.

9.15. **Ability to Make Future Plan Payments and Operate Without Further Reorganization**. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

9.16. **Projections.**

    9.16.1. The Debtor has provided projected financial information. Those projections are listed in **Exhibit PDGP304.** The Debtor may provide amended and/or expanded projections prior to or at the Confirmation Hearing. The Debtor's financial projections show that the Debtor will fully satisfy all Allowed Claims in full. *The Debtor may amend and/or supplement the projections prior to the Confirmation Hearing. You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

    9.16.2. **THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE BASED ON VARIOUS ASSUMPTIONS AND ESTIMATES AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF. SUCH INFORMATION AND STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS INCLUDING, AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD-LOOKING STATEMENTS.**

**10. EFFECT OF CONFIRMATION OF PLAN — DISCHARGE**

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in Code §1141(d)(1)(A), except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in Code §1141(d)(6)(B). After the effective date of the Plan, your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

**11. MODIFICATION OF THE PLAN**

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan. The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

**12. FINAL DECREE**

Once the estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, and shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

*{continued on following page}*

                          **PDG PRESTIGE, INC.,**
                          **DEBTOR AND DEBTOR-IN-POSSESSION**


                          <u>/s/ Michael Dixson</u>
                          **By:  Michael Dixson, President**

Jeff Carruth (SBT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(713) 341-1158, fax (866) 666-5322
jcarruth@wkpz.com
ATTORNEYS FOR PDG PRESTIGE INC.
DEBTOR AND DEBTOR IN POSSESSION

**EXHIBIT PDGP301**

| Filing Date | # | Docket Text |
|---|---|---|
| 02/15/2021 | 1<br>(6 pgs) | Voluntary Petition under Chapter 11 (Non-Individual) Without Schedules, Without Statement of Financial Affairs, With Attorney Disclosure of Compensation ( Filing Fee: $ 1738, ) Filed By PDG Prestige, Inc.. -Declaration for Electronic Filing due by 02/22/2021 (Carruth, Jeff) |
| 02/18/2021 | 3<br>(2 pgs) | 341 Meeting of Creditors **Set For 3/18/2021 at 09:00 AM at Via Phone: (866)909-2905; Code: 5519921#- Proofs of Claim Due 6/16/2021** (Resendez, Laura) |
| 03/11/2021 | 13<br>(1 pg) | 20 Largest Unsecured Creditors List filed by Jeff Carruth for Debtor PDG Prestige, Inc.. (Carruth, Jeff) |
| 03/11/2021 | 14<br>(24 pgs) | Schedules, Statements, and Summary filed by Jeff Carruth for Debtor PDG Prestige, Inc.. -Declaration for Electronic Filing due by 03/18/2021 (Carruth, Jeff) |
| 03/19/2021 | 19<br>(1 pg) | US Trustee 341 Meeting of Creditors Held (Rose, James) |
| 03/19/2021 | 20<br>(3 pgs) | Notice of Creditors' Committee (No Appointment) (Rose, James) |
| 03/26/2021 | 24<br>(47 pgs;<br>2 docs) | Motion to Obtain Credit Under Section 364(b), Rule 4001(c) or (d) filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed Order)(Carruth, Jeff) |
| 04/12/2021 |  | Hearing Held: GRANTED AS STATED ON THE RECORD; ORDER TO COME BY: JEFF CARRUTH. (Related Document(s): 24 Motion to Obtain Credit Under Section 364(b), Rule 4001(c) or (d) filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed Order)) **Order due by 4/26/2021** (Resendez, Laura) |
| 04/12/2021 | 43<br>(10 pgs) | Order Regarding (related document(s): 24 Motion to Obtain Credit Under Section 364(b), Rule 4001(c) or (d) filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed Order)) (Order entered on 4/12/2021) (McGee, Maxine) |
| 04/16/2021 | 47<br>(2 pgs) | Order Granting Motion To Employ (Weycer, Kaplan, Pulaski, & Zuber, P.C.) (related document(s): 16 Application to Employ *(21 Day Objection Language)* filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed Order)) (Order entered on 4/16/2021) (McGee, Maxine) |
| 04/21/2021 | 50<br>(98 pgs;<br>9 docs) | Adversary case 21-03007. Notice of Removal - Dennis Crimmins against Michael J Dixson, PDG, Inc., PDG Prestige, Inc. ( Filing Fee: $ 350.00 ) (Nature(s) of Suit:(62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud))). (Attachments: # 1 Exhibit A - Plaintiff's First Amended Complaint # 2 Appendix Case Detail - Docket # 3 Appendix Order Denying Expedited Motion to Cancel Lis Pendens # 4 Appendix Defendants' Answer to First Amended Complaint # 5 Appendix Defendants' Motion for Summary Judgment # 6 Appendix Plaintiffs' Memorandum in Opposition to MSJ # 7 Appendix Defendants' Reply in Support of MSJ # 8 Adversary Coversheet) (Feuille, James) |
| 05/05/2021 | 51<br>(39 pgs;<br>2 docs) | Interim Application for Compensation *(21 Day Objection Language)*, Fees $ 27839.00, Expenses $ 183.49, For Time Period From Feb. 15 2021 To Time Period Ending April 25, 2021 filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed |

## EXHIBIT PDGP301

| Filing Date | # | Docket Text |
|---|---|---|
| | | Order)(Carruth, Jeff) |
| 05/28/2021 | 56 (2 pgs) | Order Granting (related document(s): 51 First Interim Application for Compensation Fees $ 27839.00, Expenses $ 183.49, For Time Period From Feb. 15, 2021 To Time Period Ending April 25, 2021 filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Order entered on 5/28/2021) (Hardage, Bridget) |
| 07/12/2021 | 59 (2 pgs) | Notice of Closing of Financing Transaction Between PDG Prestige, Inc. and Legalist (Re: Docket Nos. 24, 43) filed by Jeff Carruth for Debtor PDG Prestige, Inc.. (Carruth, Jeff) (Related Document(s): 24 Motion to Obtain Credit Under Section 364(b), Rule 4001(c) or (d) filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed Order), 43 Order Regarding (related document(s): 24 Motion to Obtain Credit Under Section 364(b), Rule 4001(c) or (d) filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed Order)) (Order entered on 4/12/2021)) |
| 07/19/2021 | 60 (3 pgs) | NOTICE REGARDING PLAN AND DISCLOSURE STATEMENT IN CASE NO. 20-30071 filed by Jeff Carruth for Debtor PDG Prestige, Inc.. (Carruth, Jeff) |
| 10/20/2021 | 90 (23 pgs; 2 docs) | Chapter 11 Monthly Operating Report for the Month Ending: 09/30/2021 filed by Jeff Carruth for Debtor PDG Prestige, Inc.. (Attachments: # 1 Appendix MOR Attachments)(Carruth, Jeff) |
| 10/22/2021 | 91 (32 pgs; 2 docs) | Second Interim Fee Application for Compensation *(21 Day Objection Language)*, Fees $ 15762.00, Expenses $ 262.50, For Time Period From 04/26/2021 To Time Period Ending 09/25/2021 filed by Jeff Carruth for Debtor PDG Prestige, Inc. (Attachments: # 1 Proposed Order)(Carruth, Jeff) |

**EXHIBIT PDGP302**

### Exhibit PDG302

#### Summary of Assets of PDGP

| Asset | Estimated Value | Note |
|---|---|---|
| Subject Property, +/- 19 acres | 5,500,000 | 1 |
| Equity interest in The Gateway Ventures LLC | TBD | |
| Claims and causes of action | TBD | |
| | | |
| | | |
| | | |

Note 1: The value as of the Petition Date was listed at $4,700,000,

EXHIBIT PDGP303

| Exhibit PDG303 | | |
|---|---|---|
| **Liquidation Analysis** | | |
| *See also "Notes" section below.* | | |
| Asset / Expense | Amount Low Auction Result | Amount High Auction Result |
| Subject Property | 3,000,000.00 | 4,000,000.00 |
| Chapter 7 Trustee fee (0.008) | (24,000.00) | (32,000.00) |
| Chapter 7 Trustee legal expense | (30,000.00) | (30,000.00) |
| Auctioneer | (90,000.00) | (120,000.00) |
| Legalist | (5,000,000.00) | (5,000,000.00) |
| NMREA (disputed) | (160,000.00) | (160,000.00) |
| | | |
| | (2,304,000.00) | (1,342,000.00) |
| **Notes:** | | |
| Chapter 7 Trustee is provided by statute. See https://www.justice.gov/ust/chapter-11-quarterly-fees | | |
| Auctionner fee is estaimated at 3% and could be substantially higher. | | |
| The amount listed is the face amount of the Noorani judgment lien, and the final amount would include interest and attorneys' fees. | | |

**EXHIBIT PDGP304**

**Exhibit PDG304**
**Claims Asserted**

| Plan Class | ClaimNo / Scheduled | CreditorName | Total (Base Amount) | Secured | Priority Unsecured | General Unsecured | Note |
|---|---|---|---|---|---|---|---|
| n/a | 1 | City of El Paso | 0.00 | 654.08 | 0.00 | 0.00 | Withdrawn, Docket No. 18 |
| n/a | 2 | Tex. Workforce Com. | 0.00 | 0.00 | 0.00 | 0.00 | Withdrawn, Docket No. 36 |
| 1 | 3 | Dona Ana Co. Treas. | 0.00 | 0.00 | 0.00 | 0.00 | Placeholder by county property taxes. |
| n/a | 4 | IRS | 58,145.30 | 0.00 | 58,145.30 | | Under review, possibly related to, paid by other entity. |
| n/a | 5 | Suresh Kumar | 1,027,750.00 | 0.00 | 0.00 | 1,027,750.00 | Resolved in TGV bk case. No claim remaining. |
| n/a | 6 | Comptroller | 1,000.00 | 0.00 | 1,000.00 | 0.00 | |
| n/a | 7 | HD Lending | 0.00 | 0.00 | 0.00 | 0.00 | Paid in full in TGV case. |
| 3 | 8 | NMREA | 337,725.36 | 242,579.60 | 0.00 | 95,145.76 | Addressed in §364 DIP order; contingent, disputed, setoffs, |
| 4 | 9 | City Bay Capital LLC | 32,250.00 | 0.00 | 0.00 | 32,250.00 | Disputed, wrong entity (POC shows PDG, Inc. not PDG Prestige, Inc.) |
| 2 | Order | Legalist | 5,200,000.00 | 5,200,000.00 | 0.00 | 0.00 | |

**EXHIBIT PDGP305**

**PDG Prestige, Inc.**
**NO ADMISSION OF LIABILITY**

| MONTH 2022 | Feb. | March | April |
|---|---|---|---|
| **Starting cash** | 0 | 0 | 150,188 |
| **Receipts** | | | |
| Operating income | 0 | 0 | 0 |
| Asset sales / loan proceeds | 0 | 2,615,000 | 4,000,000 |
| Total Cash Receipts | 0 | 2,615,000 | 4,000,000 |
| **Expenses** | | | |
| Escrow Holdback | 0 | (350,000) | 0 |
| Closing Costs | 0 | (115,000) | (50,000) |
| Structures lien | 0 | (30,000) | 0 |
| Hold back PDGP / Developer | | (250,000) | (1,000,000) |
| Total Operating Expenses | 0 | (495,000) | (50,000) |
| **Plan Obligations** | | | |
| WKPZ (subject to final allow.) | 0 | (70,000) | 0 |
| IRS | | | (58,145) |
| CLASS 1 - Dona Ana Co. | 0 | 0 | 0 |
| CLASS 2 - Legalist | 0 | (1,800,000) | (3,500,000) |
| CLASS 3 - NMREA/Colliers | 0 | (48,000) | (100,000) |
| CLASS 4 - Crimmins | 0 | 0 | 0 |
| CLASS 5 - General unsecured | 0 | (32,250) | 0 |
| CLASS 6 - Equity | 0 | 0 | 0 |
| Total Plan Obligations | 0 | (1,950,250) | (3,658,145) |
| **Total Disbursements** | 0 | (2,445,250) | (3,708,145) |
| **US Trustee Fee (0.8%)** | 0 | (19,562) | (29,665) |
| **Net cash** | 0 | 150,188 | 412,378 |

**NOTES:**

Timing is anticipated / approximate. March receipts reflect Lot 1A transaction, April receipts reflect Lot 3A transaction.

Developer Fee / G&A - disbursed if funds available.

Assumes full amount of City Bay Capital is allowed at $32,250.

C:\Users\jcarruth\AppData\Local\Box\Box Edit\Documents\pqQvPg+liEeBzqoLaBIFPA==\[PDGP plan exhibits etc 004.xlsx]PDG305.x



EXHIBIT PDGP306



Page 2