**Dated: February 02, 2026.**

                                                  _____
                                                       **CHRISTOPHER G. BRADLEY**
                                                    **UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| In re:<br>**PDG PRESTIGE, INC.**,<br>              Debtor. | § § § § | Case No. 21-30107-cgb<br><br>Chapter 7 |
| **LEGALIST DIP GP, LLC;<br>PDG PRESTIGE, INC.**,<br>              Plaintiffs, | | |
| v. | § § § § § § § § § § § § | Adv. No. 23-03004-cgb |
| **MICHAEL DIXSON; MESILLA VALLEY VENTURES, LLC; MICHAEL DIXSON TRUST; CHRISTINA DIXSON; WEYCER KAPLAN, PULASKI & ZUBER, P.C.; FSLRO 510 SOUTH TELSHOR LAS CRUCES, LLC; LPC RETAIL, LLC; THE GATEWAY VENTURES, LLC; ENTRADA DEVELOPMENT, LLC**,<br>              Defendants. | | |

1

## OPINION AND ORDER GRANTING DEFENDANT FSLRO 510 SOUTH TELSHOR LAS CRUCES, LLC AND LPC RETAIL, LLC'S MOTION FOR SUMMARY JUDGMENT

### Introduction

The plaintiffs in this adversary proceeding assert claims against the buyer of the reorganized debtor's property, which was sold after plan confirmation as authorized by the plan and confirmation order. The plaintiffs argue (1) that executing the purchase and sale agreement for the property violated the automatic stay; (2) that the trustee can avoid the transfer of the property; (3) that a sale motion was required to sell the property; and (4) that the confirmation order should be revoked.

Summary judgment dismissing these claims will be granted because at the time of the transfer, the property was no longer property of the estate, the sale was authorized by the Court in the confirmation order, and the request to revoke the confirmation order is untimely.

### Jurisdiction and Authority

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding to recovery money under 28 U.S.C. § 157(b)(2)(H). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

### Procedural Background

On June 16, 2023, Legalist DIP GP, LLC ("Legalist") filed this adversary proceeding against PDG Prestige Inc. ("PDG" or the "Debtor") and PDG's president, Michael Dixson ("Dixson").[1] After PDG's case was converted to chapter 7, the chapter 7 trustee, Ronald E. Ingalls (the "Trustee"), moved to realign PDG as a party plaintiff, which the Court granted.[2] On February 23, 2024, Legalist and PDG (collectively the "Plaintiffs") filed an amended complaint.

---

[1] Compl., ECF No. 1.
[2] Mot. to Realign PDG Prestige, Inc., ECF No. 29; Order Realigning PDG Prestige, Inc. as Party Pl., ECF No. 30.

2

A few months later, the Plaintiffs filed a third amended complaint, adding claims against FSLRO 510 South Telshor, Las Cruces, LLC ("FSLRO") and LPC Retail, LLC ("LPC") (collectively, the "Defendants").[3] Generally, the claims against the Defendants stem from the Plaintiffs' allegation that various parties conspired with Dixson to sell estate property outside of the Court's supervision by transferring an asset, Lot 1A, to Mesilla Valley Ventures, LLC ("Mesilla Valley"), another entity controlled by Dixson, for no consideration.[4] The Plaintiffs further allege that this conspiracy led to Dixson's fraudulent use of the sale proceeds, which violated the terms of the Court's order authorizing PDG to borrow money from Legalist post-petition (the "DIP Order").[5] The specific claims at issue here are for (1) willful violation of the automatic stay under 11 U.S.C. § 362; (2) unauthorized post-petition transfers in violation of 11 U.S.C. § 549; (3) unauthorized sale of estate property; and (4) revocation of the confirmation order.[6]

The Defendants seek a summary judgment that the Plaintiffs should take nothing by way of their claims against the Defendants.[7] In response, Legalist argues (1) Legalist has first liens on the property; (2) sales require notice and a hearing; (3) the purchase and sale agreement was negotiated without disclosure to the Court; (4) the unauthorized sale is void; (5) the deadline to revoke confirmation orders does not apply to non-debtors; and (6) Legalist was damaged by the Defendants' participation in the unauthorized sale.

## Factual Background

The factual evidence presented in support of the Defendants' summary judgment motion is largely uncontroverted by the Plaintiffs or is verifiable from the pleadings filed in the main bankruptcy case.

In February of 2021, PDG filed a chapter 11 case. PDG's schedules listed real property, usually referred to as Lot 1A and Lot 3A (collectively the "Property").[8] On April 12, 2021, the Court entered the DIP Order, which authorized PDG to take out

---

[3] Third Am. Compl., ECF No. 97.
[4] Third Am. Compl., ECF No. 97, ¶¶ 201–09.
[5] Third Am. Compl., ECF No. 97, ¶¶ 245–49.
[6] Third Am. Compl., ECF No. 97, ¶¶ 210–243.
[7] Mot. Summ. J., ECF No. 152.
[8] Case No. 21-30107, ECF No. 1; ECF No. 14, ¶ 55.1 (Schedules). The Court takes judicial notice of the pleadings referenced in this opinion.

a DIP Loan through Legalist and to use the proceeds to pay off a first lien and to complete development of the Property.[9] The DIP Order gave Legalist a security interest on PDG's assets, including the Property.[10]

Almost a year later, in January of 2022, PDG filed its First Amended Disclosure Statement (the "Disclosure Statement") and Amended Chapter 11 Plan.[11] The Court approved the Disclosure Statement and set PDG's Amended Chapter 11 Plan for confirmation.[12] Section 6.1 of the Disclosure Statement stated that the Plan would constitute "a sale motion under Code §363(f) to sell Lot 1A free and clear and all liens, claims, and encumbrances . . . with the proceeds of such sale being used to fund the Plan as described herein."[13] It also stated that PDG anticipated proceeds from the sale Lot 1A to be between 1.8 and 2 million and that almost all proceeds would go to reduce the claims of Legalist.[14]

At some point, negotiations began regarding the sale of Lot 1A to LPC. On or around March 4, 2025, LPC and Mesilla Valley entered into a Purchase and Sale Agreement (the "PSA") for Lot 1A.[15] Section (t) of the PSA states

> Seller is currently the Debtor in a Chapter 11 reorganization proceeding, Case No. 21-30107, *In re PDG Prestige, Inc.*, (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Western District of Texas, El Paso Division (the "Court"). Prior to confirmation of a Chapter 11 plan, Seller will be required to obtain approval of the Court to proceed to Closing (the "Bankruptcy Approval"), which Bankruptcy Approval Seller will timely seek with due diligence and in good faith, and for which Bankruptcy Approval the Seller expects no opposition from any creditor or party in interest. The approval process will require disclosure of the sales price and/or this Agreement. Following the earlier to occur of (i) Seller's receipt of the Bankruptcy Approval of this sale pursuant to a Section 363 sale **or**

---

[9] Opp'n to Mot. Summ. J., ECF No. 158, ¶ 8; Case No. 21-30107, ECF No. 43.
[10] Opp'n to Mot. Summ. J., ECF No. 158, ¶ 17; Case No. 21-30107, ECF No. 43.
[11] Case No. 21-30107, ECF Nos. 116, 110.
[12] Case No. 21-30107, ECF No. 119.
[13] Case No. 21-30107, ECF No. 116, ¶ 6.1.
[14] Case No. 21-30107, ECF No. 116, ¶ 6.2.
[15] Mot. Summ. J., ECF No. 152, Ex. A (Dixson Depo). The PSA was later amended twice. Opp'n to Mot. Summ. J., ECF No. 158, Exs. B, C.

4

> **(ii) confirmation of a Chapter 11 plan**, **as evidenced by an Order from the Court, no further approval by the Court of this Agreement and Closing will be required.** Seller will notify Buyer of the setting of the confirmation hearing and of the entry of the order on the confirmation of the Chapter 11 plan, both of which are anticipated to occur in early March 2022, and Seller shall otherwise keep Buyer appraised as to the status of the Bankruptcy Case as requested by Buyer.[16]

This language incorrectly identifies Mesilla Valley as the Debtor but clearly shows an intent for Court approval of the PSA through either a sale or confirmation of a chapter 11 plan.

On March 31, 2025, the date of the confirmation hearing, PDG filed its Second Amended Chapter 11 Plan (the "Plan").[17] According to the Plan, PDG intended to fund payments to creditors through the Plan by, in part, a sale of Lot 1A.[18] The Plan also provided that any sales of the "Subject Property" (including Lot 1A) would constitute sales under code sections 363(f), 1122(a)(5), or 1125(b)(4).[19] In paragraph 10, the Plan also provided that PDG could sell the property without any further notice to creditor or approval of the Court:

> [U]pon the Effective Date, all property of the estate...including without limitation each of Lot 1A and Lot 3A of the Subject Property, shall vest and/or return to Reorganized Debtor, and which property the Reorganized Debtor shall be free to sell, lease, encumber, and otherwise transact and/or use in any manner without the necessity of further notice to any creditors and/or parties in interest and without the necessity of prior approval of the Bankruptcy Court.[20]

Legalist did not object to PDG's plan. After the confirmation hearing, the Court entered an order confirming the plan.[21] A couple of weeks later, Legalist, through Rice, executed a lien release for Lot 1A, based on an understanding that the

---

[16] Mot. Summ. J., ECF No. 152, Ex. A (Dixson Depo), p. 43-44 (emphasis added).
[17] Case No. 21-30107, ECF No. 145.
[18] Case No. 21-30107, ECF No. 145, ¶ 8.1.
[19] Mot. Summ. J., ECF No. 152, Ex. B, ¶ 9.9.
[20] Mot. Summ. J., ECF No. 152, Ex. B, ¶ 10.
[21] Mot. Summ. J., ECF No. 152, Ex. B.

5

proceeds would be used to develop Lot 3A.[22] The next day, Rice asked Debtor's counsel for a copy of the Lot 1A Purchase and Sale Agreement (the "PSA"), which was provided.[23] Rice raised no objection to the PSA.[24]

On April 20, 2021, PDG, through Dixon, executed a Special Warranty Deed that transferred Lot 1A from PDG to Mesilla Valley.[25] Thereafter, LPC assigned the PSA to FSLRO and Mesilla Valley sold Lot 1A to FSLRO for $2,545,000.[26] After payment of various claims, the sale proceeds were approximately $1.9 million.[27] Although the PSA was with Mesilla Valley, the proceeds were deposited into PDG's bank account.[28] A little over a year later, PDG's bankruptcy case was converted from chapter 11 to chapter 7 and the Trustee was appointed.[29]

## Analysis

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] A fact is material if it "might affect the outcome of the suit under the governing law."[31] This standard of review does not merely ask the court to determine "whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."[32] To defeat a motion for summary judgment, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial."[33] In determining a summary

---

[22] Mot. Summ. J., ECF No. 152, Ex. C, p. 73, 9-13, Ex. 3A (Rice Depo).
[23] Mot. Summ. J., ECF No. 152, Ex. C, p. 74, 18-25 (Rice Depo).
[24] Mot. Summ. J., ECF No. 152, Ex. C., p. 75, 1-24 (Rice Depo).
[25] Mot. Summ. J., Ex. A, p. 50, Ex. 5 (Dixson Depo); Opp'n to Mot. for Summ. J., ECF No. 158, Ex. D (Assignment to FSLRO).
[26] Mot. Summ. J., Ex. A, Ex. 8 (Dixson Depo).
[27] Mot. Summ. J., Ex. A, Ex. 11 (Dixson Depo).
[28] Mot. Summ. J., Ex. A, Ex. 11 (Dixson Depo).
[29] Case No. 21-30107, ECF No. 271 (Order Converting Case).
[30] FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[31] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[32] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).
[33] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) (citation omitted).

judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant.[34]

### 1. The PSA did not violate the automatic stay.

The automatic stay protects the bankruptcy estate from a wide variety of actions that would affect or interfere with property of the estate.[35] To that end, the automatic stay prevents a debtor from transferring property outside of the ordinary course of business without court approval during the case.[36] Thus, the automatic stay continues to protect property of the estate until such property is no longer a part of the estate.[37] In chapter 11 cases, "confirmation of a plan vests all of the property of the estate in the debtor," unless otherwise provided in the plan or order confirming the plan.[38] At that point, then, the automatic stay no longer protects the property.

In this case, executing the PSA did not violate the automatic stay for several reasons. First, at the time the PSA was executed, the non-debtor entity Mesilla Valley had no interest in Lot 1A and had no authority to transfer the property to the Defendants. Second, even if the contract had been between PDG and the Defendants, it explicitly and appropriately makes the sale contingent on bankruptcy approval or confirmation of a chapter 11 plan. Third, Lot 1A was not transferred to Mesilla Valley until after confirmation—in other words, after the property had re-vested in the Reorganized Debtor and the stay no longer protected the property. As there was no stay in place at the time Lot 1A was transferred, the Defendants could not have violated the automatic stay.

### 2. Executing the PSA was not a transfer.

In addition to the automatic stay, section 549 of the bankruptcy code protects property of the estate by authorizing a trustee to "avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is

---

[34] *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).
[35] 11 U.S.C. § 362(a).
[36] 11 U.S.C. § 362(a)(3).
[37] 11 U.S.C. § 362(c)(1) ("[T]he stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate.")
[38] 11 U.S.C. § 1141(b).

7

authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized by this title or by the court."[39]

As discussed above, Mesilla had no interest in Lot 1A and could not have transferred the property when the PSA was executed. The PSA in itself did not transfer Lot 1A because the transfer was contingent on approval by the bankruptcy court, either through a sale motion or confirmation of a chapter 11 plan. By the time the transfer occurred, the plan had been confirmed and Lot 1A had been revested in the Reorganized Debtor and was no longer property of the estate. In addition, the transfer was expressly authorized by the confirmed plan. For these reasons, section 549 offers no support to the Plaintiffs' contention that the transfer should be avoided.

### 3. A sale motion was not required because the sale of Lot 1A was authorized by the confirmed plan.

To sell property of the estate during a bankruptcy case, a debtor must seek approval from the court. A motion under section 363 is one way to obtain such approval.[40] However, in chapter 11 cases, property sales can also be authorized by confirmation of a plan that provides for such sales.[41]

In this case, the chapter 11 plan expressly authorized the sale of Lot 1A, therefore a sale motion under 363 was not required. In addition, because the property had re-vested in the Reorganized Debtor post-confirmation, the property was no longer property of the estate and a sale motion under section 363 was not required to sell the property.

### 4. The claim for revocation of the confirmation order is untimely.

Perhaps recognizing that their arguments are tenuous given the confirmation order that authorized transfer of the property, the Plaintiffs also contend that the confirmation order should be revoked.

Section 1144 provides that "at any time before 180 days after the date of the entry of the order of confirmation . . . the court may revoke such order if and only if

---

[39] 11 U.S.C. § 549(a).
[40] 11 U.S.C. § 363.
[41] 11 U.S.C. § 1123(a)(5)(B, D).

8

such order was procured by fraud."[42] It goes on to provide that an order revoking a confirmation order must "(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation."[43]

The confirmation order in this case was entered on March 31, 2022 and this adversary proceeding seeking revocation of the confirmation was not filed until over a year later on June 16, 2023. Thus, the request to revoke the confirmation order is untimely under the express terms of the statute.[44] Furthermore, Legalist raised no objection to the Debtor's plan at any point prior to confirmation. It is simply too late to object to it now, especially after it knowingly released the lien that would have prevented the transfer.

In sum, summary judgment is plainly warranted as to these Defendants. The Plaintiffs' arguments to the contrary border on the frivolous.

***FOR THESE REASONS, IT IS HEREBY ORDERED, ADJUDGED AND DECREED* THAT** the Motion for Summary Judgment is GRANTED.

### #

---

[42] 11 U.S.C. § 1144.
[43] 11 U.S.C. § 1144(1).
[44] The Plaintiffs contend that the time limit does not apply to non-debtor entities, but the case law cited does not support that position, which is contrary to the express terms of the statute. The statute only gives courts authority to revoke a confirmation order within 180 days of its entry, and it provides not basis for ignoring this rule based on who requests the revocation.